UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| V. | § § | CAUSE NO. SA-20-CR-032-XR |
| CHRISTOPHER FILLINE | § § § | |

**DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE
OR, ALTERNATIVELY, FOR SPOLIATION INSTRUCTION**

TO THE HONORABLE XAVIER RODRIGUEZ, UNITED STATES DISTRICT JUDGE FOR THE WESTERN DISTRICT OF TEXAS:

The criminal investigation that led to this charge began when Oscar Hernandez was traffic-stopped, arrested, and placed in a patrol vehicle. At the jail, said he was asked by his cousin, Ambrose Rymers (Castroville's animal control officer), to help Rymers steal and burn a Lincoln Navigator on behalf of another law enforcement officer whom Hernandez referred to only as "Sarge." Hernandez never personally met "Sarge" and did not know "Sarge's" name.

Before being taken to jail, Hernandez sat in the back of a patrol vehicle at the scene of his traffic stop and arrest. Defendant Christpher Filline, then Castroville's Police Chief—and thus not a "Sargeant"—appeared briefly on the scene. When Oscar Hernandez got to the jail, he told his story—about the alleged vehicle arson—to one "Sargeant" Russell, whom discovery indicates harbored personal animus towards Filline. And eventually, Ambrose Rymers—whom discovery reveals had disdain and resentment towards Filline—alleged it was Filline who asked him to burn the vehicle (which had belonged to Filline). After the traffic stop, Sargeant Russell told the officer who had arrested Hernandez that his squad car camera footage had been wiped. Defense investigation indicates that Sargeant Russell was the primary officer who had access to

that downloaded footage, and that Filline did not have access. It appears one or some local officers who investigated Filline destroyed potentially exculpatory evidence by wiping the squad camera footage, which would have captured any conversation between Filline and Hernandez, as well as anything else Hernadez said in the back of the car while alone or to any other officer present. Because of this, Filline moves the Court to dismiss the indictment with prejudice or, failing that, for a spoliation instruction.

## BACKGROUND

At about 7:16 a.m. on Saturday, 16 July 2016, Bexar County firefighters were dispatched to a vehicle fire on a rural road in unincorporated Bexar County. Arson Investigator Marcel Garcia identified the vehicle as a white 2007 Lincoln Navigator registered to Christopher Filline and his wife, of Lytle, Texas. The Navigator was a total loss.

At about 4:45 p.m. the following Monday, Christopher Filline reported the Navigator stolen to the Lytle Police Department. Filline—who was the Police Chief of nearby Castroville, Texas—thought the Navigator was stolen from his home over the weekend, producing keys he explained were the vehicle's only keys. Farmers Insurance Group, who valued the Navigator at $13,272, considered the resulting police report and performed its own investigation. Finding no fraud, Farmers paid $14,725.91 (the loan balance) to the vehicle's lienholder.

More than two years passed.

On 26 November 2018, Jonathan Nunemaker, then a Castroville police officer, conducted a traffic stop in Medina County, Texas, for expired registration. During the stop, Nunemaker identified the driver as Oscar Hernandez. On the phone during the stop, Ambrose Rymers, then the local animal control officer, told Nunemaker that Hernandez was his cousin by marriage.

During the stop, Nunemaker arrested Hernandez for an outstanding warrant—placing Hernandez in the back seat of his patrol vehicle, which was equipped with an interior camera that recorded visual footage and audio.

During the stop, numerous other officers arrived on scene, including Castroville Police Dept. Sargeant Gary Russell and Police Chief Christopher Filline. While Hernandez was in the backseat of the squad car, Filline allegedly spoke with him briefly through the car's window. Other officers likely spoke with him as well. The patrol vehicle's interior cam would have captured these interactions and anything else said by Hernandez.

After being transported back to the jail, Hernandez spoke with Sgt. Russell in a recorded conversation, because he had requested to speak with a supervising officer he referred to as "Sarge." He alleged that he and his cousin, Rymers, burned the Navigator, supposedly at the instigation of a supervising law enforcement officer, though Hernandez never met this instigator and did not know his name; he just referred to this alleged instigator as "Sarge." Hernandez said he participated so that he could avoid trouble with Castroville police if pulled over. And a few days later, Inv. Garcia interviewed Hernandez, who reiterated his claims, albeit with inconsistencies. Eventually, after repeatedly denying any wrongdoing, Rymers gave a story somewhat matching Hernandez, including adding in the alleged detail that it was Filline who asked him to take and burn the vehicle.

Defense counsel knows from investigation and discovery review that Rymers disliked Filline at least because, when Filline first interviewed for the chief position, Filline told Rymers he would never promote Rymers to police officer because Rymers was too overweight. And during a later interview of Sgt. Russell, Russell showed his resentment towards Filline when he said he thought Filline was an embarrassment who spoke about personal matters too much at

work. Defense investigation has also revealed that Russell complained about Filline's appointment as chief, stating that Russell—not Filline—should be the police chief.

At some point, Sgt. Russell told Nunemaker that Nunemaker's interior squad camara footage—from Hernandez's traffic stop and arrest—had been wiped. Defense investigation has indicated that Sgt. Russell, as the main criminal investigator, was the individual with primary access to the this downloaded footage; Filline, to counsel's knowledge, did not have such access.

## ARGUMENT

**1) The Court should dismiss the indictment with prejudice.**

For the destruction of this squad cam footage, Filline moves the Court to dismiss the indictment. Particularly if the Court holds an evidentiary hearing, Filline's motion to dismiss is capable of determination "without a trial on the merits." Fed. R. Crim. P. 12(b)(3). Failing such a pretrial grant, Filline alternatively asks the Court to defer ruling on his motion to dismiss until hearing whatever additional relevant may come in at trial. *See* Fed. R. Crim. P. 12(d) (rulings on pretrial motions are deferable if the district court finds good cause to do so); *United States v. Jones*, 833 F. App'x 528, 544 (5th Cir. 2020) (trial courts may "wait to decide a motion until after hearing possibly relevant evidence scheduled to be presented at trial").

Either way, dismissal is justified here. When evidence deemed to be in the possession of the government is destroyed or lost (such that the lost evidence's exculpatory value cannot be precisely evaluated), that violates due process if the government can be said to have acted in bad faith. *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *United States v. Vasquez-Hernandez*, 314 F. Supp. 3d 744, 766–67 (W.D. Tex. 2018), *aff'd*, 924 F.3d 164 (5th Cir. 2019). Expanding on this area of law in the context of *Jencks v. United States*, 353 U.S. 657 (1957), the Fifth Circuit held that sanctions should be imposed for lost or destroyed evidence deemed to have

been in the government's possession, if the loss or destruction amounted to "bad faith" or "negligent suppression." *United States v. Ramirez*, 174 F.3d 584, 589 (5th Cir. 1999); *see also* 18 U.S.C. § 3500 (Jencks Act). Remedies include dismissal or exclusion of the evidence at issue. *See California v. Trombetta*, 467 U.S. 479, 487 (1984); *see also United States v. de Leon*, 627 F. Supp. 3d 682, 701–04 (W.D. Tex. 2022) (listing similar remedies for bad-faith destruction of Rule 16 evidence and ordering defendant's confession suppressed as remedy for destruction of confession's alleged recording).[1]

In *Ramirez*, the Fifth Circuit vacated the defendant's trial conviction due to the loss of tapes of prison-recorded conversations between an inmate informant and an officer under *Jencks*, and it remanded for the district court to hold a hearing on whether the loss of the tapes was intentional or negligent, on the one hand, or done in good faith, on the other hand. *See* 174 F.3d at 588-89. The Fifth Circuit suggested a finding of negligence was warranted due to the likelihood that the government knew about the tapes, and it also opined that the tapes' loss was likely prejudicial due to their probable impeachment value. *See id.* The Court also stated that the remedy in the case—for negligent or intentional loss—would be *dismissal* of the indictment. *See id.* at 589. The Supreme Court too has noted that—along with excluding evidence—barring prosecution is a remedy for lost or altered evidence. *See Trombetta*, 467 U.S. at 487.

---

[1] The *Youngblood / Trombetta / Ramirez* line of case law is slightly different than *Brady v. Maryland*, 373 U.S. 83 (1963). In *Brady* cases, the suppressed evidence is known, so its materiality can be concretely judged, and the remedy is retrial with the evidence.

And to be clear, Filline is not alleging bad faith on the part of the United States Attorney's Office. Rather, he is alleging bad faith (or at minimum, negligence) on the part of the local officers who were responsible for maintaining this interior squad cam footage and who whose initial investigation formed the basis for the eventual federal charges.

5

This case is similar. Nunemaker's internal squad camera would have captured any conversations between Hernandez and officers, as well as anything else Hernandz may have said in the patrol vehicle. Hernandez only knows what he was told; he never met Filline, and he referred to the alleged instigator of the arson as "Sarge." Filline was the chief; Russell was a sergeant. Both Sgt. Russell and Rymers had reason to dislike Filline, and Sgt. Russell apparently thought he—not Filline—should have been the police chief. Then the vehicle was suspiciously taken and burned, resulting in an insurance fraud investigation, though no finding of fraud was reached. And then years later, Hernandez—who (again) never met Filline, who only knew what Rymers told him, and who hoped he was supposed to be given a pass from traffic stops and arrests—tells this story (after being stopped and arrested) about a "Sarge" instigating the taking and burning of the vehicle. Rymers (eventually) went along with it, alleging Filline's involvement.

On top of all that, at some point, Sgt. Russell informed Nunemaker that Nunemaker's squad camera footage of Hernandez's stop and arrest—which would have captured the on-scene conversation between Hernandez and any law enforcement officer and whatever else Hernandez may have said in the patrol vehicle—had been mysteriously "wiped." Suspiciously, Nunemaker did not disclose to federal authorities that Sgt. Russell told him his camera system had been "wiped" until 27 June 2022, two-and-a-half years after the federal indictment was filed. And defense investigation has indicated that Sgt. Russell, as the main criminal investigator, was the individual with primary (and perhaps sole) access to the this downloaded footage; Filline, to counsel's knowledge, did not have such access.

Finally, both Rymers and Hernandez have been convicted of fraud offenses in federal court. For his part, Nunemaker was fired from his most recent law enforcement position

6

following a first-degree felony conviction for aggravated assault by a public servant under Tex. Penal Code Ann. § 22.02(b)(2)(A). And Russell no longer works for the Castroville PD for reasons that remain unclear; he may have been let go because of an internal complaint. Russell opined that he should have been chief both *rather than* Filline and *after* Filline held that position, but he never was named chief.

Whether based on evidence at a pretrial evidentiary hearing (if the Court rules pretrial) or based on trial evidence (if the Court defers ruling until trial), the Court should infer bad faith (or negligence) on the part of the officers who investigated Filline, due to the destruction of this interior squad camera footage. *See United States v. de Leon*, 627 F. Supp. 3d 682, 690–95 (W.D. Tex. 2022) (inferring bad faith destruction from circumstances, including officer's motive). *Ramirez* was a *Jencks* case, and whatever Hernandez said on the wiped recording could fall under the Jencks Act, considering that Hernandez is a prospective witness. Additionally, Filline is entitled to his own statements, if any, under Fed. R. Crim. P. 16(a)(1)(B)(i)). *See* 18 U.S.C. § 3500(b) and (e)(2). But regardless of whether the recorded statements fall under the Jencks Act or Rule 16, the government still has an obligation to provide the defense with all material exculpatory evidence. *See generally Brady v. Maryland*, 373 U.S. 83 (1963). And when evidence is destroyed or lost, considering its likely exculpatory value—and thus the likely prejudice of its absence—is fair game. *See Ramirez,* 174 F.3d at 588-89. And when bad faith (or negligent) destruction of potentially useful evidence is inferable—and it is inferable here—dismissal is a proper remedy. *See id.* at 589; *Trombetta*, 467 U.S. at 487. Filline asks the Court for this remedy.

2) **Alternatively, the Court should admit evidence of—and instruct on—spoliation.**

If the Court declines to dismiss the indictment, Filline objects to that ruling, and—as an alternative remedy—he asks that the Court allow the admission of spoliation evidence and

include a jury instruction on spoliation. Spoliation of evidence "is the destruction or the significant and meaningful alteration of evidence." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (cleaned up). To obtain a spoliation instruction, the accused must show "bad faith or bad conduct" by the government.[2] *United States v. Valas*, 822 F.3d 228, 239 (5th Cir. 2016); *United States v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000). Or at least bad faith or bad conduct by state officers who gathered evidence relevant to the later federal prosecution. *See United States v. Antone*, 603 F.2d 566, 569–70 (5th Cir. 1979) (applying imputation principle when ruling on new trial request under *Brady/Giglio*); *United States v. Scott*, No. CR 17-181, 2021 WL 2210925, at *2 (E.D. La. June 1, 2021) (stating standard in Rule 16 context and collecting cases). Filline asks the Court to allow evidence of spoliation and to give a spoliation instruction. He specifically asks the Court to charge the jury as follows:

> You have heard testimony about evidence which has not been produced. Counsel for defendant has argued that this evidence was in the control of officers who investigated this case and may well have been material to this case.
>
> If you find that the officers who investigated this case could have obtained and produced this evidence, and that this evidence was likely important in deciding among the facts in dispute in this case, then you are permitted, but not required, to infer that the evidence would have been unfavorable to the government. You may also use this possible spoliation to help you judge the credibility of the government's witnesses and the evidence the government obtained from them.
>
> In deciding whether to draw this inference, you may also consider whether the government—or the officers who investigated this case—had a reason for not producing this evidence that was explained to your satisfaction. Again, any inference you decide to draw should be based on all the facts and circumstances in this case.

---

[2] In contrast, the Ninth Circuit holds that a spoliation instruction need not be predicated on a finding of bad faith. *United States v. Sivilla*, 714 F.3d 1168, 1173 (9th Cir. 2013). Since the court's "principal concern is to provide the accused an opportunity to produce and examine all relevant evidence, to ensure a fair trial," a court "must balance the quality of the Government's conduct against the degree of prejudice to the accused." *Id.* at 1151-52. Filline preserves for further review whether the Ninth Circuit's standard is the correct one.

## CONCLUSION

For these reasons, Filline asks the Court grant his motion to dismiss or, failing an immediate grant, to defer ruling on the motion until hearing the relevant evidence at trial. If the Court does not dismiss pretrial, Filline also asks the Court to permit the introduction of spoliation evidence and to give a spoliation instruction.

Respectfully submitted.

MAUREEN SCOTT FRANCO
Federal Public Defender

/s/ MOLLY LIZBETH ROTH
Assistant Federal Public Defender
Western District of Texas
300 Convent Street, Suite 2300
San Antonio, Texas 78205
State Bar No. 24040140
(210) 472-6700
(210) 472-4454 (Fax)

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of July 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of same to:

Gregory Surovic, AUSA
601 N. W. Loop 410, Suite 600
San Antonio, Texas 78216-5512

/s/ MOLLY LIZBETH ROTH
*Attorney for Defendant*

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| V. | § § § | CAUSE NO. SA-20-CR-032-XR |
| CHRISTOPHER FILLINE | § § | |

**ORDER**

Having examined Defendant Filline's motion to dismiss, the Court **GRANTS** the motion. the indictment is hereby **DISMISSED WITH PREJUDICE**.

SO ORDERED on this the _____ day of _____, 2024.

_____
XAVIER RODRIGUEZ
United States District Judge