IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| -vs- | § § § | SA-20-CR-0032-XR |
| CHRISTOPHER FILLINE,<br>    *Defendant* | § § § § | |

## ORDER

On this day came to be considered the Defendant's Motion to Dismiss, or a motion for a spoliation instruction (ECF No. 129).

## BACKGROUND

The defendant, Christopher Filline,[1] is charged in an indictment with conspiracy to commit wire fraud. The Government alleges that Filline owned a 2007 Lincoln Navigator, which was insured with the Farmers Insurance Group. The Government alleges that in July 2016, Filline schemed to defraud Farmers by conspiring with Oscar Hernandez and Ambrose Rymers to fake the vehicle being stolen and then having the vehicle burned. Thereafter, Filline filed an insurance claim and received $14,388.25.

The Government alleges that at some time before July 15, 2016, Filline spoke with Rymers about destroying his vehicle. Rymers allegedly told Filline he knew someone who would do the job, and Oscar Hernandez was retained. Allegedly Filline left the car keys in the vehicle to facilitate the act.

---

[1] From 2013 to January 2019, Filline was employed by the Castroville Police Department as its Chief of Police.

1

On the night of July 15, 2016, Rymers and Hernandez allegedly went to where the car was parked (a parking lot next to the Castroville police department), started the car, and drove it to a remote location. Thereafter, Hernandez poured an accelerant into the vehicle and burned it. Hernandez then drove away in Rymers' car.

The burning of the car took place in Bexar County, Texas. The City of Castroville is in Medina County. The investigation of the car burning was done by Marcel Garcia, an officer of the Lytle Texas police department (located in Bexar County). During the arson investigation, Filline gave statements to the Lytle police department.[2]

Filline reported his car stolen on July 18, 2016. He then submitted a claim to Farmers and received payment on his claim.

Over two years passed when on November 26, 2018, Castroville Police Officer Jonathan Nunemaker pulled over a vehicle for an expired registration sticker. That driver first claimed his name was Alfredo Garcia, but it was later determined that his true name was Oscar Hernandez. Officer Nunemaker was assisted by Officer Dorsey Krause in arresting Hernandez, who had an outstanding felony arrest warrant. Filline later arrived at the scene. It is unknown whether he spoke with Hernandez at the scene of Hernandez's arrest.

While Hernandez was in the police vehicle he requested to speak with his cousin, Officer Ambrose Rymers, and someone he referenced as the "sarge."[3] When Hernandez was inside the police vehicle, if the police department's recording system was functioning properly, the audio/video should have captured what was said inside the vehicle. Officer Krause asked

---

[2] These statements apparently have been produced to the Defendant in discovery.
[3] ECF No. 129, at 6.

Hernandez why he wanted to speak to these persons and Hernandez allegedly claimed that he had "helped"[4] them previously and then claimed he had helped them destroy a Lincoln Navigator.

Hernandez was later taken to a hospital for complaints of back and shoulder pain. While at the hospital Hernandez was interviewed by Castroville police sergeant Gary Russell.[5]

On January 10, 2019, federal law enforcement authorities began to investigate the Lincoln arson insurance claim and "other suspicious activities."[6] The indictment in this case was filed on January 22, 2020. Hernandez pled guilty in this case and was sentenced on August 3, 2022, for conspiring with Rymers and Filline to commit wire fraud. Rymers pled guilty to conspiracy to commit wire fraud and is awaiting sentencing.[7]

## **DISCUSSION**

I. **Defendant's Motion to Dismiss**

The Defendant argues that the Government should have preserved and produced the patrol car Vidtac (video) recording, and that it failed to do so. The Defendant appears to imply that Sergeant Russell had "primary access"[8] to the recording and that he may have destroyed the recording. Alternatively, Defendant argues that even if the recording was negligently lost, he is entitled to a dismissal of the indictment, or a spoliation instruction being given to the jury at trial of this case.

---

[4] ECF No. 133, at 4.
[5] This interview was allegedly recorded on Russell's cell phone. *See id.*, at 5. This recording was preserved and has been turned over to the Defendant in discovery in this case.
[6] ECF No. 133, at 5.
[7] *See United States v. Rymers*, SA-20-cr-0045, ECF Nos. 3 and 4.
[8] ECF No. 129, at 4.

### A. Brady and Rule 16 Generally

Generally recorded statements made by a defendant before or after arrest and any statements made by the defendant to a government agent must be produced. Fed. R. Crim. P. 16(a). *Brady v. Maryland*[9] requires the prosecutor to produce evidence that is materially favorable to the accused. Fed. R. Crim. P. 16 requires that the U.S. Attorney's Office make a demand on the agency who did any investigation to search its records to determine whether any statements by the accused exist.

### B. Statement made by the Defendant

In this case, Filline argues that although he appeared at the scene of Hernandez's arrest, he has no recollection of speaking to Hernandez. Accordingly, the Court finds that no violation of *Brady* or Rule 16 has been established by the Defendant as it pertains to any statement the Defendant may have made the day Hernandez was arrested.

### C. Brady and failure to produce evidence that is materially favorable to the accused

The Defendant argues that the "lost" patrol car recording would have been favorable because it may have established that Filline never spoke with Hernandez the day Hernandez was arrested. He also argues that if the recording had shown Sgt. Russell speaking with Hernandez that would also be "likely exculpatory."[10] He also argues that the lost recording would likely be exculpatory because it may show Hernandez wanting to speak with "sarge" rather than then-Chief of Police Filline.

---

[9] 373 U.S. 83, 87 (1963).
[10] ECF No. 138, at 4.

The Court finds that although it is impossible to ascertain with certainty whether any lost evidence would reveal relevant and material information, here Defendant relies upon rank speculation that the recording would contain evidence that is materially favorable to him.

In this case, the patrol car recording cannot be located.[11] Sgt. Russell states he became aware that the audio/video file was not available on November 27, 2018. The FBI began its investigation in this case on January 10, 2019,[12] the date that Marcel Garcia contacted the FBI to let them know this case may be a public officer corruption case.[13] No allegation is made that the U.S. Attorney's Office had anything to do with the recording being tampered with or destroyed. Regarding *Brady*, it is difficult to assess whether the recording would tend to be exculpatory (that is, Hernandez said something that would indicate that Filline was not involved in any false insurance claim). And it is unknown whether the patrol car recording could be used at trial to impeach or discredit any government witness.[14] In his post-hearing brief, Filline argues that the officers may have used excessive force in arresting Hernandez and that somehow statements made in the patrol are therefore relevant to this case against Filline for wire fraud. The Court simply does not understand the relevance of any excessive force allegation.

---

[11] The patrol car had a Vidtac system recording device that should have recorded any conversations that took place while Hernandez was in the patrol car. Apparently, when a police vehicle equipped with this system returns to the police station, any recordings are automatically uploaded when they are in range of the wireless network. On November 27, 2018, Castroville police officers attempted to access the Vidtac recordings and discovered they did not exist, despite the belief of officers at the scene that the system was functioning properly. *See* ECF No. 133, at 5. An insinuation is made that Filline may have deleted the recording. *See id.*, at 7-8 & n.2. Filline, on the other hand, suggests that others in his former police department deleted the recording as some form of retaliation against him. *See* ECF No. 129, at 1-2. The Government also suggests that when the audio/video feed was supposed to automatically upload, there may have been a malfunction in that process because the system was known to fail on other occasions.
[12] *See* ECF No. 133, at 9.
[13] An email may have been sent to the FBI about this matter on December 11, 2018.
[14] *See United States v. Glenn*, 935 F.3d 313, 319 (5th Cir. 2019) (concluding that the defendant failed to establish that had the evidence in his case been disclosed to the defense, the result of the proceeding would have been different); *see also United States v. Powell*, No. 3:20-CR-292-S, 2023 WL 1879998, at *3 (N.D. Tex. Feb. 9, 2023) (denying motion to dismiss indictment because the Defendant "failed to demonstrate any material exculpatory evidence contained on the audio or video recordings. At most, the lost evidence is 'potentially useful'").

Otherwise, the Defendant suggests that his former subordinates destroyed the tape on November 27, 2018, because the recording would have helped him "in any future prosecution or disciplinary / employment decision related to the burning of the Navigator."[15] Again, this is mere rank speculation. The Defendant further speculates that perhaps the tape was not destroyed on November 27, 2018, because the federal authorities investigating this matter were not informed of the lost recording until June 27, 2022 (implying any recording could have been destroyed from November 27, 2018 until June 27, 2022). Again, the Defendant is simply speculating that the recording was destroyed at some later time. The Defendant further seems to suggest that Sgt. Gary Russell was the interim police chief in 2013, and that he is somehow responsible for the lost recording because he continues to hold a grudge because Filline was ultimately selected as police chief in 2013, and that Russell was biased against him, thinking Filline was unfit. All this rank speculation does not demonstrate bad faith.

In addition, any duty to preserve the patrol car recording is limited to what might be expected to play a significant role in the defense of the charge. At the hearing held on September 3, 2024, no evidence was presented that when the recording was presumably lost (November 27, 2018), any law enforcement officer was under the impression that a wire fraud investigation would commence in January 2019, and that an indictment would be brought against Filline in January 2020.

## II. Spoliation Instruction

To warrant a spoliation instruction being given to a jury, the Fifth Circuit requires evidence of bad-faith conduct by the government. *See United States v. Wise*, 221 F.3d 140, 156 (5th Cir.

---

[15] ECF No. 138, at 3.

2000). The Government argues that the bad faith misconduct must be attributable to either the arson investigators or the FBI. The Defendant argues that the bad faith misconduct can be attributable to the actions of the Castroville Police Department officers. Regardless of which individuals should be held accountable, no such evidence of bad-faith conduct has been shown here, and the Defendant's motion for a spoliation instruction is denied. First, it has not been clearly established that the patrol car recording was spoliated by anyone at the Castroville Police Department. The Government argues that in other instances the Vidtac automatic downloading failed, and that may have occurred here. Defendant appears to also argue that if there was a negligent loss of the recording, that would also justify a dismissal of the indictment. That argument fails however, because bad faith must be shown.

### III. Due Process Claim

As for the Defendant's argument that the loss of the patrol car recording mandates dismissal of the indictment because the loss violates the Due Process Clause of the Fourteenth Amendment,[16] that motion is also denied. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) ("We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process.").[17]

---

[16] *California v. Trombetta*, 467 U.S. 479, 480 (1984).
[17] Filline also relies upon a decision rendered by the Fifth Circuit in *United States v. Ramirez*, 174 F.3d 584, 587 (5th Cir. 1999). In *Ramirez*, the defendant argued that an incarcerated government informant was speaking with a government agent while in prison. Those phone conversations were recorded by the prison. When the informant testified at trial, testimony about these phone calls revealed these phone conversations. Ramirez argued that pursuant to the Jencks Act, the United States was required to disclose the prior statements of the informant/witness and that it had failed to do so. The Fifth Circuit noted that the Jencks Act required disclosure. The Court further concluded: "[W]e believe there is a high likelihood of prejudice to Ramirez because had the government produced the tapes, Ramirez could have used the evidence to impeach the government's most important witnesses. The district court should explore these issues with the U.S. Attorneys on remand in making a meaningful determination of their culpability regarding the lost recordings. If the district court determines that the government intentionally or negligently lost the tapes containing the conversations, it must dismiss Ramirez's indictment, because a new trial cannot remedy the government's nondisclosure." Filline's reliance on *Ramirez* however fails. This is not a Jencks Act violation issue.

"A defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *California v. Trombetta*, 467 U.S. 479, 485 (1984) (citing *Brady v. Maryland*, 373 U.S. at 487).

Due process imposes a duty upon the government to preserve evidence "that might be expected to play a significant role in the suspect's defense." *Trombetta*, 467 U.S. at 488–89. "To qualify as constitutionally material in this sense, the evidence must: (1) 'possess an exculpatory value that was apparent [to the police] before the evidence was destroyed,' and (2) 'be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *Trombetta*, 467 U.S. at 489. "[I]f the exculpatory value of the evidence is indeterminate and all that can be confirmed is that the evidence was 'potentially useful' for the defense, then a defendant must show that the government acted in bad faith in destroying the evidence." *Johnson v. City of Cheyenne*, 99 F.4th 1206, 1226 (10th Cir. 2024); *United States v. Moore*, 452 F.3d 382, 387 (5th Cir. 2006). The Defendant has failed to show that someone in the Castroville Police Department destroyed the patrol car recording of Hernandez in 2018 and knew then that the recording would possess an exculpatory value to Filline in defending this conspiracy to commit wire fraud charge. The Court adds that the Defendant's subjective belief that some police officer(s) destroyed the video is that – speculation and not competent evidence. Defendant further provides mere speculation that the patrol car recording would contain material evidence to this wire fraud conspiracy charge. Defendant has also failed to establish that the Hernandez patrol car recording was "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." The officers who interviewed Hernandez the day the patrol car video was made could be called to the witness stand. Former officer Nunemaker's

dash camera recording is available and has been produced to the Defendant. Further, Castroville police sergeant Gary Rusell's interview of Hernandez at the hospital that he recorded on his cell phone is available.

## CONCLUSION

Defendant's Motion to Dismiss, or a motion for a spoliation instruction (ECF No. 129) is hereby **DENIED**.

It is so **ORDERED**.

**SIGNED** this 9th day of September, 2024.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE